Good morning, ladies and gentlemen. We'll begin today's arguments with United States v. Cruse. Mr. Donovan. Thank you, Your Honor. Good morning, and may it please the Court and opposing counsel. I'm Attorney Chris Donovan. I represent Mr. Henderson on this appeal. Both this Court and the Supreme Court have held that a plea is not Please don't touch the microphone. I'm sorry. Both this Court and the Supreme Court have held that a plea is not entered knowingly, intelligent, and voluntarily if a defendant pleads guilty to the crime without knowledge of its essential elements. Entering such a plea does not just violate Rule 11, but violates due process. And basically that's what occurred in this case. There was really two plea colloquies that took place. In one, the judge was talking about the indictment. And in the other, Mr. Henderson was talking about the information to which he was supposed to plead guilty, but that was never filed. So basically one conversation, but two vastly different understandings. And this confusion matters. I seem to have understood the same crime. I don't believe it is the same crime. I think that the Supreme Court's made clear that any fact that increases a mandatory minimum is an element of the crime, and we know that different drug weights for different drug types. Actually, the Supreme Court has expressly held that the weight of drugs is not an element of the crime. I'm not familiar with that. The Fourth Circuit held otherwise and got reverse 9-0. My reading of Alleen is that it is an element of the offense because it raises the mandatory minimum. In this case, the indictment charged both more than 5 kilograms of powder and more than 280 grams of crack, and either one raises the mandatory minimum, so either one would be an element. I don't think you understand the difference between an element and something that is essential to be found by a jury. There are things in one category that are not in the other. That was the Fourth Circuit's problem. That's why it got reversed. Believe me, we will follow the Supreme Court. I understand, and I believe that Alleen does hold that it's an element, and if it's an element and he didn't understand, I believe that it goes to whether he knew about the knowing, intelligent, and voluntary nature of the plea. I don't know how to respond to that. I'm not familiar with what authority you're referencing because I think Alleen is clear. Here, I think there's several things that show that there is a misunderstanding. The plea colloquy began with the judge referencing the plea agreement, which is fine because the plea agreement referenced the information he was supposed to plead to. At that point, so far, so good. But then he asked Mr. Henderson if he understood the elements of Count 1, not specifying which count, and I think it would have been reasonable for Mr. Henderson to assume he was referencing Count 1 of the information, which was just referenced by the judge moments before. So, again, still not too far off at this point. But after going through the rights that Mr. Henderson waived by pleading guilty and the possible penalties he faced, then the judge starts talking about the special verdict form that would have had to be considered by the jury had Mr. Henderson gone to trial. And here's where we're veering off course because I believe at that point Mr. Henderson could have believed that the judge was referencing if he went to trial on the indictment and not on the information because the information was only filed as part of the plea agreement, that he was still talking about the correct charging document. Everybody understood that he was pleading guilty to conspiracy to deal crack. Correct. And the cocaine aspect of Count 1 was sort of in addition to, along with the marijuana part of the conspiracy charge in Count 1. I don't understand what he didn't understand because everyone was operating under the assumption that he was pleading guilty to trafficking in crack. Correct, but what he did understand was that he was also pleading to five or more kilograms of powder, and that's what he did by entering the plea to the indictment instead of the information. Well, the judge struck that. I don't know that that's going to cure the error. First off, I don't think prejudice has to be shown under Bradley and this Court's decision of Bradley and under McCarthy, the Supreme Court. I don't think prejudice has to be shown. But I think there could be prejudice in this case down the road if a future court, for some reason, was looking back at the change of plea colloquy transcript instead of the amended judgment or anything else that happened. So, for example, if Congress in the future lowers the penalties or eliminates the penalties, for example, for crack offenses, but leaves intact powder offenses, and a future court looks back and says, well, you pleaded the indictment, the indictment had both powder. He hasn't been convicted of a powder offense. He's been convicted only of a crack offense. I don't know that the Court amending the judgment after all of this happened fixes that error. And we don't know what a future court might look back to to decide whether or not he would be eligible for a change in the law. Why doesn't it fix the error if the judgment is to the crack conspiracy only? That's the judgment of conviction. That's what he understood he was pleading to. There's no question that he understood the elements of that offense. Again, I guess it might be far-fetched, but we don't know that a future court would go only by the judgment and not look back at the change of plea colloquy and read the transcript and see that he entered a plea to the indictment, the indictment which later was dismissed, and then the judge had to reinstate after this issue was litigated. It's the judgment that has legal force. I mean, if that's the only thing that the Court would look at, then I would agree that there might not be prejudice. But, again, I don't know that that matters because in both Bradley and McCarthy, I don't think prejudice has to be shown. And I think that what we're really looking at is, what did Mr. Henderson understand at the time he entered his plea? I don't think he understood that he was entering the plea to both the crack and the cocaine offense. And so, therefore, I think at that point in time is when his plea was no longer knowing, intelligent, and voluntary. That's when due process was violated, and I think that that's what this Court has to look at to then decide that it has to go back and he has to be given the opportunity to withdraw his plea. And if there's no other questions, I see I'm close to the end of my time, so I will cede time to the rest of them. Certainly, Mr. Donovan. Thank you. Mr. Kaplan. On behalf of Mr. Cruz, may it please the Court. The evidence presented at trial consisted of testimony about one-to-one, arm's-length transactions between Mr. Cruz and a few government witnesses. Cruz requested a buyer-seller instruction to distinguish buy-sell agreements from the agreement that constitutes conspiracy. His request was denied. The District Court's denial of Cruz's requested instruction requires reversal for two basic reasons. First, the evidence supported the instruction. Second, once the buyer-seller evidence crossed a threshold, met here by the extensive testimony about arm's-length, one-to-one, buy-sell interactions, Cruz was entitled to the instruction, notwithstanding any countervailing evidence. Once that threshold was crossed, Cruz was entitled to his requested instruction because a reasonable jury could entertain a reasonable doubt on that basis. Sufficient evidence supported the instruction. First, the evidence at trial was of transactions. 4.5 ounces at Cousin's Sub Shop with Winters. One ounce with Mathis at this other location. One-to-one. Second, Cruz was always alone. It was always Cruz selling to someone else as an adversary in the transaction, trying to get the best deal for himself, the person on the other side trying to get the best deal for himself. He was always on the opposite side of a transaction. There was no evidence that he was side-by-side with anyone trying to get drugs or trying to sell drugs. Third, there were no shared profits. There were no discounts. Cruz always paid a market price for his drugs. If anything, he paid a high price. Riley's testimony was about how much money he was making off each sale to Mr. Cruz. Fourth, most of the transactions were cash. Far and away, most of the transactions were for cash. Late in the alleged conspiracy, there were some transactions on credit. There was no evidence of consignment, contrary to what the government states. What was the evidence about his involvement in the West Lawn gang? That was equivocal, Your Honor. Mr. Winters testified that he was not in the gang. No was his answer to the question of whether he was in the gang. Other witnesses said, yes, he was in the gang. When pressed, it appears that the gang was people who grew up in the neighborhood. When asked why Mr. Cruz was allowed to sell drugs in and around West Lawn, the answer was he grew up there. He was known. As this court has noted on other occasions, to engage in an illegal transaction, you need to have some familiarity. You can't just walk up to someone on the street. So he was a known person, but that does not mean that he was in the gang. There was no testimony about him participating in any initiation rites. That was testified to by some of the other witnesses or having any tattoos or any other indicator that he was a, quote, gang member. Fifth, the government characterizes Cruz as a customer of Winters and Seymour, for example, as a customer of Cruz. In talking about the transactions, it's clear that these are buyer-seller interactions and not partnerships. As far as the instruction is concerned, is there anything to be said for what the judge offered, depending on the closing argument? Your Honor, the question is, is there anything to be said for what Judge Randa's reasons for rejecting the instruction? With at least a caveat that he would reconsider if that argument was made a closing argument. I don't believe that was Judge Randa's point. With respect, I believe that his point was if you choose to put on a case. At that point, Mr. Cruz had not put on a case and chose not to testify or put on an affirmative case. So the import of Judge Randa's statement, I believe, was, if you choose to put additional evidence on, you may get to the point where I would be willing to give this instruction. Right now, I see no evidence supporting the buyer-seller instruction. Of course, I believe that is wrong, considering that all of the evidence, or 99 percent of the evidence, was of one-to-one, arm's-length transactions. What stage of the trial was that, then? So you're saying this wasn't when you were discussing instructions before closing argument? They discussed the instructions before closing argument. And he's offered to open it up again? At that point, Judge Randa had not yet asked Defendant Cruz and Defendant McClain if they wished to testify. So that had to be closed first, and they hadn't decided one way or the other, hadn't stated conclusively one way or the other, whether or not they would put on an affirmative case. So Judge Randa left it open. If they did, I suppose maybe Judge Randa could, we could believe that if Cruz got up there and said, yes, I engaged in transactions, but this was just my business, then the instruction would have been given. That was the impression left. I'm sorry. The instructions conference was held before the defense case? Correct. Before the decision was made conclusively that Mr. Cruz would not testify. I see that I'm into my rebuttal time, so I will reserve some time. Certainly, Mr. Kaplan. Thank you, Your Honor. Ms. Grant. Your Honor, Your Honors, may it please the Court, my name is Suzanne Grant, and I, along with my colleague Martin Gold, represent Appellant Daniel McClain. Now, as you're likely aware, we also made a buyer-seller argument in our brief, and I don't want to repeat anything that Mr. Kaplan has said. I just want to reiterate that in this case, the evidence presented at trial supported that theory of defense, and that's the standard in the circuit in order to give the jury instruction on buyer-seller. And when the evidence of conspiracy is thin, that instruction is even more warranted. As the Court said in the United States v. G., in cases where such evidence presented at trial is so weak, they should have sua sponte given that instruction. In this case, specific to McClain, there was no testimony concerning McClain distributing drugs with anybody. There was no testimony about any sort of drug network. In fact, witness Corey Winters testified that there was just a buyer-seller relationship. Based on the instruction given by the Court after rejecting McClain's proposed instruction, the jury basically had no option but to find Defendant McClain guilty because there was no distinction between conspiracy to distribute drugs and distribution itself. I thought there was extensive testimony from the co-conspirators that McClain was using middlemen for these transactions. I believe that there was testimony from the witnesses about middlemen, but there was nothing to say that McClain knew that these individuals were middlemen. He merely sold drugs to people. No one ever stated that McClain knew that these people would then go and distribute drugs with somebody else. He merely sold to them. Also, at the end of the instruction, the Court stated that mere association is not sufficient to find a conspiracy, implying that possibly. Counsel, would you be happy if we just ordered the District Court to change the conviction from conspiracy to substantive drug distribution? No, I don't believe. You mean the conviction itself? Yes. That seems to be your argument, that the government proves substantive drug distribution, so my client should be convicted of substantive offenses rather than conspiracy. As far as I can tell, the punishment for the two is identical, so I wonder why you care. Well, I am not saying that he was guilty of substantive drug dealing. I'm stating that the evidence at trial. But the jury could not have convicted on either your theory or the prosecutors without finding that your client did indeed distribute drugs. We don't know. And the whole premise for a buyer-seller instruction is what my client did was engage in spot transactions in drugs rather than agree to a future transaction in drugs. Right? So the whole premise of this buyer-seller argument is the jury could find, jury could and undoubtedly did believe your client guilty of distributing drugs. And so that should be the conviction rather than conspiracy. And since the punishment for the two convictions is identical, who cares? Because, Your Honor, he was not charged with distribution. He was charged with conspiracy. Well, why isn't that a lesser-included offense? Well, the government should have chose to charge him then with drug distribution. No, no, no. The whole idea of lesser-included offense is that you don't have to put it in the indictment. If in order to find somebody guilty, you have to find the substantive crime, there it is. And that seems to be your theory. Well, my theory is we don't know what the jury would have found had it been properly instructed on the distinction. Had the jury believed your client, there would have been no conviction for anything. So the jury believed the government's evidence. The only question in this case is what was the right thing to convict of when the jury believed the government's evidence. That's correct. But the charge was conspiracy in this case. And whether the jury believed or not that he was a drug dealer, I believe – You just seem to fundamentally disagree with the idea that there can be a conviction necessarily found by the jury even though not charged in the indictment. That's a pretty old rule. I don't think that under these circumstances we can make the assumption what the jury would or would not have found had they been properly charged. Is there any way that the jury, a rational jury, could have convicted your client of conspiracy without believing that your client engaged in substantive drug transactions? Any way at all? Well, I believe that the jury could have determined that there was – I don't know what the jury could have determined. They could have determined based on their interpretation of the evidence presented at trial. But we don't know what they would have found if they had been given the buyer-seller jury instruction. No, that's not the question I'm asking. People can behave randomly or erratically. I'm asking whether a rational jury could have convicted your client of buying or selling drugs. That's the question on this record with these instructions. I don't know what the jury believed. That's not my question. I believe that the jury could have found that he distributed drugs. And, in fact, because they didn't understand the distinction between buying and selling drugs and conspiracy, they thought it was a conspiracy. So, yes, I mean, they could have believed he was a drug dealer. But, Your Honor, I don't know what they believed. They could have based on the evidence. We just don't know. I don't want to run out of time, so I'd like to quickly go on to the Confrontation Clause argument that we make in our brief. In this case, Agent Kruger, the government's first witness, testified to out-of-court statements made by unidentified confidential informants directly inculpating Defendant McClain in drug distribution. This was a clear violation of his rights under the Constitution. These informants were never identified. The government never identified them to the district court, and it was not until their brief in this matter on appeal that they stated that these informants were then later witnesses that testified at trial. However, in their brief, they never cite to a record, a record cite that says that this was the case. That's because nowhere during their opening, during the examination of these witnesses, did they ever identify these witnesses as the same individuals who made the out-of-court statements to Detective Kruger. This argument depends on a premise that I'm not sure is present, which is that the evidence was offered for the truth. And this was in the context of an examination of the witness that pertained to connecting the dots in the investigation. So it wasn't offered for the truth. It was offered to show what happened during the course of the investigation. Your Honor, I believe that it was offered to prove the truth of the matter asserted because it inculpated Defendant McClain in the drug distribution. And even if it was purportedly used as background information, this court in U.S. v. Silva still stated that even as background information, the prejudicial effect of these statements cannot be understated. Defendant McClain was not permitted the opportunity to cross-examine these witnesses. He was not permitted the opportunity to impeach them. In fact, this was very prejudicial because the government's first witness was Detective Kruger. He laid out the entire theory of the case. He's a DEA agent with over 13 years of experience investigating crimes, making hundreds of arrests. And by stating that these unidentified confidential informants told him certain information that led to the arrest, he was saying to the jury, I believe these confidential informants. I believe them, and that is why I chose to arrest Defendant McClain. This was very similar to, as I said, Silva and Lovelace, in which the court found these type of statements were incredibly prejudicial. I see I'm running out of time. So for these reasons, I believe the conviction should be reversed and the case remanded. Thank you. Thank you. Ms. Grant? Ms. DiMaggio. Good morning, Your Honor. May it please the court, Virjit Dimashak, Assistant United States Attorney for the Eastern District of Wisconsin, appears for the United States. Your Honors, with respect to Defendant Cruz's arguments regarding the buyer-seller agreement, I'd like to remind the court, I think this comes off very clearly from the transcript, that the buyer-seller argument was not a defense at trial. Counsel, I'm puzzled by why, in the world, the Seventh Circuit continues to have these cases. The only reason why there's a debate over the buyer-seller instruction is that the indictment didn't charge the dead-bang substantive offenses. Is there some reason why prosecutors refrain from making the obvious charge? Is it that you want to take a dead-bang, can't-lose case and convert it into a difficult appellate issue? No, absolutely not. And I definitely think that that is a legitimate concern faced by prosecutors in cases such as this, where conspiracy is the most appropriate charge, and there are not substantive offenses. Why is conspiracy the most appropriate charge? Under the guidelines, under both the statute and the guidelines, the punishment for the substantive crime in the conspiracy is identical. Nothing happens as a result of a conspiracy charge, except the injection of a wholly pointless appellate issue. I completely agree. In this case, I think it would have been possible to structure a and then prove it in the same way that the conspiracy was proved, in other words, by testimony from the cooperating defendants. The best answer I could give you is that it was an exercise of executive discretion. I don't doubt that the prosecutor has the discretion to decide to skate on thin ice rather than taking a sure win. It just seems a very strange thing to do. Well, in this case, Your Honor, the evidence reflected that the defendants, both McClain and Cruz, their involvement in this conspiracy was the most appropriate charge. Were there other charges potentially? Sure. I think there could have been some that were thought up. For example, potentially there could have been a felon in possession charge. There could have been a substantive offense. It would have been proved, however, the same way. I think it's important to remember that in this case, there were so many cooperating defendants who testified this was such a large conspiracy between Sixth Tray and West Lawn that the government's view of this case is that it wasn't weak. In fact, it survived a motion to dismiss after the government's case and after the close of the defendant's case. Was there any problem with statute of limitations? No. I know that this comes up sometimes in long-ranging conspiracies, but I believe that the subtle case law in this circuit is that when the conspiracy is charged and it stretches back past the statute of limitations, as long as there have been acts that occur within the statute of limitations, that evidence can come in. It's particularly true in drug conspiracies where there's a long-term relationship, such as in this case. Well, I'm just referring to somebody like Cruz who opened a bar up. I don't know whether he ever claimed withdrawal or not, but is the statute five years or something? Yes. So whereas the conspiracy, obviously, if it stretches over a period of time and it's still going, then everybody can be drawn in. That's the only reason for my question. Maybe mostly with Cruz. Yes. There was evidence of Cruz's participation in the conspiracy, though, within the statute of limitations. And so when we look back, I mean, the case was charged in 2011, and that's when the statute of limitations is assessed, correct? And so I believe that the cocaine seizure from him, just as an example, was 2007 or 2008. It might have been a little bit later, but at any rate, definitely within the five-year statute of limitations as of the I'd like to note that with respect to the argument that this is a case of individual sales, of course, the record demonstrates hundreds of individual sales between Mr. McClain and Mr. Cruz. But that is because the nature of these sales were important to illustrate. Your argument about the instruction is that if the defendant denies everything, then there can't be a buyer-seller instruction. I wonder whether that position is consistent with the Supreme Court's decision in Matthews about entrapment defenses, which said that the defendant can deny everything and still demand an entrapment instruction. Why should the buyer and seller instruction be different? In this case, Your Honor, because I'm not asking about this case. I'm asking about the implications of the Supreme Court's decision in Matthews. If this case I'm not asking about this case. I'm asking about the implications of the Supreme Court's decision in Matthews. Nothing that the this court, the government is not asking this court to disturb the holding in Matthews. Absolutely not. We can't disturb anything decided by the Supreme Court. I am asking about the implications that Matthews has for buyer-seller instructions. The implications are consistent with this court's previous holdings. Why? Which are that. Why? Which is that. I know this court's decisions. I am asking about Matthews. Now if you don't know what Matthews is, just say so. Your brief doesn't cite it and then maybe the panel will ask for supplemental briefs. But you're not addressing my question. I'm sorry that I failed to address your question. I believe that I understand the holding of Matthews and I believe that what the court would be concerned about in this case would be issuing a decision that said that if a defendant does not raise a certain claim, they're precluded from raising a defense. And that's not what the government is asking in this case. That's also not remotely related to Matthews. It's quite evident that you don't know the Matthews case and filibustering won't help you. Well, I would request permission to do supplemental briefing. The court will ask for briefs if it deems it necessary. Thank you, Your Honor. With respect to the buyer-seller argument in this case, not only was the evidence of the individual sales necessary to illustrate how a conspiracy worked in this case, the Seventh Circuit Committee has noted that the buyer-seller instruction should be given when there's no way that the jury could have found a conspiracy. In other words, where there's only a buyer-seller instruction. And as this court noted earlier this morning, it would have been impossible in this case. And that's for a couple reasons. First, with respect to Defendant Cruz, although he's argued that there has been... I think you're misreading the instructions from the Jury Instruction Committee. The committee has instructed courts to give this instruction if any evidence supports it. And here, particularly with respect to Cruz, there is evidence that supports it. And the inconsistency of the buyer-seller argument with a defense, I didn't deal drugs at all, is off the table in light of Matthews. So it seems to me that once you've charged conspiracy to the exclusion of a distribution offense, the government shouldn't be resisting the giving of this instruction if there's any evidence that supports it. Well, and the government doesn't generally resist giving this instruction, but I think it's important to remember that there was a jury instruction conference in this case. It did happen at the close of the government's case, but I will refer you to the transcript where Judge Brandon noted that this was going to be... This is transcript 1084, that it was a standing objection, basically, that it could be revisited at any time. And several days later, after the weekend had passed... This sounds like a waiver argument. I don't think the argument was waived or forfeited. No, I don't think it was either, but I sense that there was a concern by the panel earlier this morning that the instruction was held at the end of the government's case as opposed to the end of the trial, and I just wanted to note that that was a standing objection. Right, I was just trying to clarify the chronology based on the argument that was being made, but the defendant doesn't have to take the stand and say, hey, look, I'm just a dealer. I wasn't a conspirator. That's not a predicate for the buy or sell our instruction. It's required if any evidence supports it, and there was evidence that supported it here, at least with respect to Cruz. Well, I mean, it wasn't... I think a review of Cruz's evidence against defendant Cruz is really important. First of all, the evidence starts back in the mid-to-late 90s where he's distributing cocaine with Cory Winters, and he's teaching individuals at an individual, at a man named Ken's house, how to cook powder cocaine into crack cocaine. Once, when he was, I don't know, 15 years old or something. That's kind of a slim read on which to resist this instruction. Well, Aaron Seymour testified that later, between 2003 and 2006, when he would obtain half-ounce quantities of cocaine every other day from defendant Cruz, Cruz would cook it into crack cocaine for him. So it's something that continued throughout the course of the conspiracy. That's what he was known for. And that's at transcript 620. I know that defendant Cruz has also argued that there's no evidence of sales on consignment. Michael Riley testified that, in fact, when he was released from prison in 2001 or 2002, he would obtain a kilogram of cocaine from his supplier, which he would then immediately provide to Cruz on consignment. So there is evidence of fronting in this case. There's also evidence of fronting with Cory Winters. He testified in the mid-to-late 90s. He fronted cocaine to Cruz. For example, he provided Cruz with 4 1⁄2 ounces of cocaine on consignment, and he was paid later on delivery, and that was at transcript 253. Were the witnesses all part of the conspiracy? Yes, Your Honor. The government's theory is that all the witnesses were part of the conspiracy, and that's how they had this firsthand detailed knowledge about defendant Cruz and McLean's drug-trafficking activities. I wanted to go back to my point about why it's necessary to discuss the individual sales because I really think that, in this case, that argument is a red herring, and I'd just like to give a couple examples of why individual sales are so significant. We'll start with defendant McLean. Both Shyamwan Mathis and William Holmes testified that they obtained cocaine from DeJuan Howard. And in that case, or in those examples from the record, it sounds like repeated individual sales between Shyamwan Mathis and William Holmes. Well, what's really important to remember is that, and this is at transcripts 368-72 and transcript 801 and other places in the record, that Mathis and Holmes were buying cocaine from DeJuan Howard that DeJuan Howard obtained from Daniel McLean. And the reason that they knew that was because both of them testified that when their powder cocaine would not properly cook into crack cocaine, which was very important for them because that affected their bottom line, they would call DeJuan Howard and Dan McLean would come to them and he would fix it. So it's important to talk about these individual sales to Shyamwan Mathis and William Holmes to demonstrate the existence of the conspiracy with Daniel McLean and DeJuan Howard. Unless this court has any further questions for me, I just ask that this court affirm the judgment of the district court. I have one. That is, if the buyer-seller instruction was available, I'm saying if, could it be argued that that's all they did and therefore could not be convicted of a conspiracy? Absolutely not. And that's the government's theory of this case is that it was impossible to convict them only of a buyer-seller agreement. And I understand that the government has a different perspective of what the Seventh Circuit Committee meant when they said when this buyer-seller instruction is appropriate. As I articulated before the district court, it seems like there has to be a theory presented as opposed to it wasn't me or a case of mistaken identity. But in this case, because of the examples of crews cooking, teaching others how to cook crack cocaine, getting sales on consignment for members of West Lawn, Dan McLean using runners, and Dan McLean fronting other members of Six Tray, those are clearly not buyer-seller. And even if you were to focus on the entire evidence at trial, there's no way to convict them only of the individual sales. It's a conspiracy. I know Judge Easterbrook pointed out that it was a lesser-included offense. I think that's an interesting way to think about it because I think you do have to find the individual sales to get to the conspiracy. But I think it would have been impossible to convict them only of buyer-seller. I only raise it because that's one of the things they argue. It's not presented at the trial, but if you just focus just on that and said all they did was buy and sell, et cetera, and they weren't part of the conspiracy, the conspiracy is a separate charge and separate conviction, as I understand it. Maybe under different circumstances they could be separated. Well, I mean, first of all, I think it's important to remember that the jury is the fact-finder in this case, and they decided who to believe. And they were advised ahead of time, or I'm sorry, they were advised before they deliberated that they were to, first of all, not convict of a conspiracy because the defendants associated with members of the conspiracy. They were advised to treat certain witnesses with special caution, including those who had criminal convictions, and they decided that they believed the jury that there was a conspiracy. I think an example of where it would have been absolutely impossible to find a buyer-seller was with Kendall Burtson. He said twice per month he received a half kilogram or kilogram of cocaine from McLean at no cost. He would then go and sell it and return the profits to McLean. That was at transcript 816. He kept his share, which was $2,000 to $3,000 per kilogram. I think with, again, coming back to Defendant Cruz, when Corey Winters testified and Michael Riley that Cruz was really the catalyst for teaching others how to cook crack cocaine when it first came into vogue in the 1990s in West Lawn, he's giving business advice, he's looking out for others, they're distributing from the same house within this project. I think it would be impossible to find a buyer-seller there. There, in fact, was no cocaine. Nobody testified that in the course of cooking the crack cocaine, there was a transaction between Mr. Winters and Mr. Cruz or Mr. Riley and Mr. Cruz. There was just business advice at that point, combined with an agreement to look out for competitors who would come into West Lawn, an agreement to watch out for customers, and all that other evidence that was admitted at trial. You know those agreements, I guess, continued throughout the conspiracy. Correct. It wasn't a time when those were old. No, and I think in this case the evidence reflects that this conspiracy functioned because the defendants, or because the co-conspirators knew each other. So they knew who was in Six Tray and they knew who was in West Lawn, and those were the individuals who were permitted to sell cocaine there. Did it later morph into individuals who knew each other who maybe would do drug transactions in other locations who were members of this conspiracy? Possibly, but the heartland of the evidence in this case is that was the tie that bound everyone together, which I think undermines the defense argument that there were multiple conspiracies in this case. You know, in a traditional hub and spoke, you're going to have one person who knows all the co-conspirators and he has individual agreements with all of them, and without a rim, it's a fatal variance. In this case, clearly the gang membership was the rim that held this hub and spoke conspiracy together, if you want to call it that. I know that the government has continually referred to this as a horizontal conspiracy. I think that's the best analogy because you have these individuals working in tandem or in parallel alongside each other to distribute cocaine, as opposed to a traditional vertical conspiracy where the buyer-seller really is implicated because you have a source of supply with a customer that they might not know very well or the customer below them that they might not know very well, and this court has repeatedly expressed concern about that and urged prosecutors to tailor their evidence to the factors articulated in Cologne and Kincannon. This is, first of all, not that case. It's a horizontal, but also some of those Cologne and Kincannon factors were present. I know that I've talked about them quite a bit, but clearly there was the sales on consignment, there was the advising each other on threats of law enforcement, controlling an area for the purpose of distributing cocaine, the joint venture really which was to make money from selling powder cocaine, crack cocaine, and marijuana. Unless the court has any further questions, I ask you to affirm. Thank you. Thank you, counsel. Mr. Donovan, anything further? No, Your Honor. Mr. Kaplan. Thank you, Your Honor. The government is consistently conflating sufficiency of the evidence to convict for conspiracy with evidence sufficient to give the buyer-seller instruction. Over and over again, they're doing that. This case against Mr. Cruz was buy, sell, independent sales. He acted alone, just him, buying and selling cocaine. That was the testimony. That is a buy-sell case. The buy-sell instruction should have been given. The case needs to be reversed and remanded for a new trial. Just on a few factual points, there were no sales, there was nothing between McLean and Cruz, just to clarify the record in case that was unclear based on the government's argument. There was no business advice. As the court mentioned, this cooking crack lesson happened in seventh grade for Mr. Winters. So I think it's not much to rely on. There was no consignment. In our brief and repeatedly, Mr. Cruz does not dispute that there was evidence of sales on credit, but there was not evidence of sales on consignment. The word was used, but the sale on credit was described. So to the extent that that distinction is important for this court, and it has been in some of the opinions, I just want the court to note that. Finally, United States v. Brown last year clarified the content of the instruction, and now I think there's no question along with the Seventh Circuit pattern instructions, there should be no more cases on what the proper content of the buy-sell instruction is. Now I think this case could clarify when the instruction should be given, and in a case like this where it's all one-to-one transactions. You say we should clarify when the instruction should be given. You heard my question about Matthews. What do you think? Your brief doesn't rely on Matthews. Yes, it does, Your Honor. I couldn't find it in your brief. It's cited repeatedly in my brief. Is there some problem with my search facility? Anyway, I will look at it. You don't ask us to overrule our existing cases, which may well be inconsistent with Matthews. I don't ask you to overrule because I don't think I have to go that far, and my interest is my client and having the court reverse and remand for my client. I do not think that Mr. Cruz needed to put forth an affirmative case, and I say as much in the brief. But what the court has said is usually what has happened in the cases is that you have same-side transactions. You have a confidential informant. My apologies, by the way. I was searching the wrong defendant's brief. I wasn't searching yours. Thank you, Your Honor. Usually what happens in these cases is you have a confidential informant selling to two people on the same side. In this case, and then the court will also note, well, this also wasn't a defense theory end of case. Also often come up in plain error cases where the court is looking for the overall prejudice and saying, this really wouldn't be fair to reverse. The district court didn't really make a mistake. The defendant didn't even bring this up. I see that my time is finished. Thank you, Your Honor. Thank you. Ms. Grant. Your Honors, I just wanted to clarify a couple things. For one, when you had asked about the lesser-included offense, I just wanted to reiterate to the court that it's well settled in the circuit that conspiracy is a different crime than the substantive crime to distribute. I just wanted, based on the cases, that these are different crimes, and it is our position that the jury should have been aware of that distinction. I also wanted to clarify for the record that I believe the government cited to the wrong standard of when the jury instruction should be given. I believe she stated that it should only be given if it's absolutely impossible for the jury to find a conspiracy, but that's not the standard. The standard is whether there is evidence in the record that a rational juror could find that there was a buyer-seller relationship. And as we discussed at length in our brief and today, there is that evidence. There is some foundation in the record, as the United States v. Douglas stated, as the standard for giving jury instruction. And lastly, I just wanted to state that all the arguments that the government made today concerning whether there was co-assignment or whether there was middlemen or agents or runners, that is all proper arguments for the jury. The jury is the fact finder that should have evaluated the evidence and determined whether there was a conspiracy. It should not be made to the court to determine whether a jury instruction is appropriate or not. Leave it to the fact finder to evaluate the evidence and to decide if there is sufficient evidence for a conspiracy. If you have no further questions, that's all I have. Thank you. Thank you very much. Mr. Donovan, Mr. Kaplan, Ms. Grant and other counsel on the brief, we very much appreciate your willingness to accept the appointment in this case and your assistance to the court as well as your client. The case is taken under advisement.